**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| LEE BOYD**,** individually and on behalf of all others similarly situated, | : : : : : | CASE NO. |
| Plaintiff, | : : | |
| v. | : : | DEMAND FOR JURY TRIAL |
| HAIN CELESTIAL GROUP, INC., | : : | |
| Defendant. | : : : | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Lee Boyd, on behalf of herself and all others similarly situated, by her

undersigned attorneys, brings this Class Action Complaint against Defendant Hain Celestial

Group, Inc. ("Hain Celestial," "Hain" or the "Company") for its negligent, reckless, and/or

intentional practice of misrepresenting and failing to fully disclose the presence of toxic heavy

metals in its baby food products sold throughout the United States, including in this District.

Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class and Sub-Class

(defined below), including requiring full disclosure of all such substances and ingredients in

Defendant's marketing, advertising and labeling; requiring testing of all of the ingredients and

final products for such substances; and restoring monies to the members of the proposed Class.

Plaintiff alleges the following based upon personal knowledge as to herself and her own actions,

and, as to all other matters, alleges, upon information and belief and the investigation of her

counsel.  Plaintiff believes that substantial evidentiary support will exist for the allegations set

forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.      This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the proposed Class and subclass defined below, all of whom purchased one or more baby food products manufactured by Hain Celestial.[1]

2.      Defendant markets, advertises, labels, distributes, and sells baby food products under the brand name Earth's Best throughout the United States, including in this District.

3.      Defendant states that it "produc[es] pure, quality products you can trust."  Hain Celestial "ensure[s] that the ingredients" in its products "do not use potentially harmful pesticides or fertilizers."  The Company touts that this "rigorous quality assurance process allows us to meet the strict standards for organic certification."  The Earth's Best Organic brand "strive[s] to provide better-for-baby products that are pure, safe and sustainable."  *See* https://www.earthsbest.com/why-earths-best/our-promise/.

4.      The packaging and labeling on Earth's Best Organic baby food further emphasizes quality and safe ingredients and even proclaims that the products are "grown without potentially harmful pesticides or herbicides."

5.      Parents like Plaintiff trust manufacturers like Defendant to sell baby food that is safe, nutritious, and free from harmful toxins, contaminants and chemicals.  Parents purchase Baby Food Products with the expectation that they do not contain high levels of heavy metals, substances known to have significant and harmful health effects.

6.      Because consumers do not have the scientific knowledge necessary to determine whether the Baby Food Products contain high levels of heavy metals or to know or ascertain the

---

[1] The Hain Celestial baby food products purchased by Plaintiff are: Earth's Best Organic Infant Cereal, Rice Cereal (referred to herein as the "Baby Food Products").

true nature of the ingredients in the Baby Food Products, they must rely on Defendant to honestly report the contents of its products.

7.     On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, released the results of an investigation into the seven leading baby food manufacturers in the United States relating to alleged high amounts of detrimental metals in baby food.

8.     The Subcommittee Report (defined below) revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals, and … that the manufacturers have often sold foods that exceeded those levels." Subcommittee Report at 4.

9.     Heavy metals are not listed on the product labels of the Baby Food Products. Nor do the labels warn of the potential presence of high levels of heavy metals in the Baby Food Products. Unbeknownst to Plaintiff and other members of the proposed Classes, and contrary to the representations on the product labels, the Baby Food Products contain toxic heavy metals, including inorganic arsenic, lead, cadmium, and mercury, at levels above what is considered safe for babies. Had the presence of these levels of heavy metals been disclosed to Plaintiff and the members of the proposed Classes prior to purchase of the Baby Food Products, they would not have purchased or allowed their children to consume the Baby Food Products.

10.    Defendant knows that its customers trust the quality of its products and that they expect Defendant's products to be free of harmful levels of heavy metals. Hain Celestial is also aware that many consumers seek out and purchase premium baby foods that contain high quality ingredients, free of toxins, contaminants or chemicals and that these consumers will pay more for baby foods that they believe possess these qualities.

11.    Defendant's promises, warranties, pricing, statements, claims, packaging, labeling, marketing and/or advertising center on representations that are intended to, and do, convey to consumers that their products, including their Baby Food Products, possess certain qualities and characteristics, including that the baby food is does not have high levels of heavy metals by making assurances that the foods are natural and safe for infant consumption.

12.    Defendant asserts that its baby foods products are "time-trusted and safe" and that Earth's Best strives "to provide better-for-you baby, toddler, and kid products made from pure ingredients".  *See* http://www.hain.com/ourbrands/earths-best/.  Defendant states that it employs "rigorous internal standards and testing procedures ensure Earth's Best products meet or exceed the current federal guidelines."  https://www.earthsbest.com/parents/faq/.  These statements are in direct contradiction of the true contents of Baby Food Products, which include toxic levels of heavy metals.

13.    No reasonable consumer seeing Defendant's marketing and labeling would expect the Baby Food Products to contain toxic levels of heavy metals or other contaminants.  Reasonable consumers, like Plaintiff, would consider the inclusion of high levels of heavy metals or other toxins or contaminants a material fact when considering what baby food products to purchase.

14.    Defendant intended for consumers like Plaintiff to rely on its marketing, and reasonable consumers did rely on Hain Celestial's marketing.  As detailed herein, because the Baby Food Products contained undisclosed levels of contaminants, and/or toxic heavy metals, the Baby Food Products' labeling and marketing is deceptive, misleading, unfair and/or false.

15.    Defendant's Baby Food Products do not have a disclaimer or warning that the products may contain high levels of heavy metals or other undesirable toxins or contaminants that can accumulate in a child's body over time and cause deleterious effects.

16.    Defendant's wrongful marketing and advertising, which includes misleading, deceptive, unfair, and false marketing and omissions, allowed Hain Celestial to capitalize on, and reap enormous profits from, consumers who paid the purchase price or a premium price for the Baby Food Products that were not sold as advertised.  Defendant continues to wrongfully induce consumers to purchase its Baby Food Products that are not as advertised.

17.    Plaintiff and the members of the proposed Classes thus bring claims for consumer fraud and seek damages, injunctive and declaratory relief, interest, costs, and attorneys' fees.

## THE PARTIES

18.    Plaintiff Lee Boyd is, and at all relevant times hereto has been, a citizen of Texas and is a member of the proposed class defined herein.  She purchased Defendant's Earth's Best Organic Baby Food Products, including organic infant rice cereal.  Plaintiff Boyd last purchased the Baby Food Products for her child from Amazon.com on or about January 2021.  Prior to purchasing the Baby Food Products, touted as "pure, quality products you can trust," Plaintiff Boyd saw Defendant's nutritional claims, including "wholesome," and "safe" upon which she relied in deciding to purchase these products.

19.    Plaintiff believed she was feeding her child healthy, nutritious foods during the time she purchased and fed her child the Baby Food Products.  Due to the false and misleading claims and omissions by Defendant as described herein, Plaintiff was unaware that the Baby Food Products contained high levels of heavy metals, and Plaintiff would not have purchased the baby food if that information had been fully disclosed.

20.     As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff was injured when she paid the purchase price or a price premium for the Baby Food Products that did not deliver what they promised.  Plaintiff paid the purchase price with the assumption that the labeling of the Baby Food Products was accurate and that they did not contain high levels of heavy metals and they were safe for children to ingest.  Plaintiff would not have paid this money had she known that the Baby Food Products contained excessive levels of heavy metals.  Damages can be calculated through expert testimony at trial.  Further, should Plaintiff encounter the Baby Food Products in the future, she could not rely on the truthfulness of the packaging and labeling, absent corrective changes.

21.     Defendant Hain Celestial is a Delaware corporation with its principal place of business and headquarters located at 111 Marcus Avenue, #1, Lake Success, NY 11042.  Defendant is a citizen of the State of New York.  Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells its Baby Food Products under the Earth's Best label throughout the United States, including in this District, during the Class Period (defined below).

22.     The advertising, labeling, and packaging for the Baby Food Products, relied upon by Plaintiff, was prepared, reviewed, and/or approved, and disseminated by Defendant and its agents through marketing, advertising, packaging and labeling that had the misrepresentations alleged herein.  The marketing, advertising, packaging and labeling for the Baby Food Products was designed to encourage consumers like Plaintiff to purchase the Baby Food Products.  Defendant is responsible for sourcing its ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing, of the ingredients and finished Baby Food Products.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2) because the claims of the proposed members of the Classes exceed $5,000,000 and because Plaintiff is a citizen of a different state than Defendant.

24.     This Court has personal jurisdiction over Defendant because Defendant regularly sells and markets its Baby Food Products in this District, and because Defendant otherwise conducts business in this District and/or under the stream of commerce doctrine by allowing its products, including the Baby Food Products, to be sold in this District.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over Defendant.  Defendant has intentionally availed itself of the laws and markets of this District, and Defendant is subject to personal jurisdiction in this District.  Defendant Hain Celestial has its principal place of business and headquarters in this District.

## FACTUAL ALLEGATIONS

26.      Defendant manufactures, distributes, markets, offers for sale and sells the Baby Food Products throughout the United States.  Defendant has advertised and continues to advertise these products via television, print advertisements, point-of-sale displays, product packaging, Internet advertisements including on social media, as well as other promotional materials.

27.     The United States House of Representatives Subcommittee on Economic and Consumer Policy published a report on February 4, 2021, revealing its findings that numerous commercial baby foods, including those manufactured by Defendant, are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."  *See*

U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021) (the "Subcommittee Report").  Congressional investigators examined a wide variety of baby foods including rice cereals, purees, puffs and juices.  The Subcommittee Report found that organic products were as likely as conventional products to contain heavy metals.  Subcommittee Report at 9.

28.    Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or water.  The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

29.    Defendant was one of the seven largest baby food manufacturers in the United States from whom the Subcommittee requested internal documents and test results.  Hain Celestial responded to the requests and produced internal testing policies and results for ingredients and/or finished products.  Subcommittee Report at 2.

30.    The Subcommittee Report found that baby food companies such as Hain Celestial regularly sell products that contain ingredients that exceed their own internal standards for heavy metals.  Subcommittee Report at 33.  According to the Subcommittee Report, most baby food companies do not regularly test the products before they go to market, and when they do, products with high levels of heavy metals are still sold to consumers.

31.    Representative Raja Krishnamoorthj, chairman of the Subcommittee, told Consumer Reports that there are "dangerous levels of toxic metals in baby foods, and the levels far exceed what experts and governing bodies says is permissible.  Left to their own devices, baby food makers have set testing standards in excess of what recommended standards are, and even then, they often violate their standards."

32.     The Subcommittee Report provides evidence that baby food companies such as Defendant are not doing enough to reduce risk from exposure to these heavy metals, and that parts of the manufacturing process, including the addition of vitamins and mineral mixes, may be contributing to the high levels of these metals in the Baby Food Products.  The Subcommittee Report concludes that "[t]hese toxic heavy metals [in baby foods] pose serious health risks to babies and toddlers.  Manufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."  Subcommittee Report at 1.

33.     Hain Celestial touts its Earth's Best baby food as "quality products" that are "pure" and "safe".  https://www.earthsbest.com/why-earths-best/our-promise/.  Yet, Earth's Best labels and packaging do not warn that there may be heavy metals in the Company's baby food products.

34.     The FAQ section of the website states "rigorous internal standards and testing procedures ensure Earth's Best products meet or exceed the current federal guidelines." https://www.earthsbest.com/parents/faq/.  However, the website does not detail the testing process.

**Defendant Falsely Marketed Its Baby Food Products**

35.     Defendant packages, labels, markets, advertises, manufactures, distributes, and sells its Baby Food Products throughout the United States, including in this District.  Defendant markets the Baby Food Products as healthy, high quality and safe, and omit any mention of heavy metals.

36.     Defendant advertises that "nothing is more important to Earth's Best than the trust and confidence of parents that our organic products provide safe nutrition for healthy babies."

9

37.    Based on Defendant's decision to advertise, label, and market its Baby Food Products as healthy, safe and high quality, Defendant had a duty to ensure that these statements were true and not misleading.  As such, Defendant knew or should have known that the Baby Food Products included nondisclosed levels of heavy metals, and that these toxins accumulate in the body over time.

38.    The marketing of the Baby Food Products also fails to disclose that the products contain or may contain any level of heavy metals or other undesirable toxins or contaminants. Defendant intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiff to purchase the Baby Food Products.

39.    As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Baby Food Products without conducting his or her own scientific tests or reviewing third party scientific testing of these products.

**Defendant Misled and Deceived Consumers**

40.    Defendant's marketing of its Baby Food Products wrongfully conveys to consumers that these foods have certain superior quality and characteristics that they do not actually possess.

41.    For example, Defendant misleadingly caused Plaintiff and other consumers to believe that its Baby Food Products do not contain high levels of heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

42.    In or about October 2019, Defendant's baby foods were tested by Health Babies Bright Futures, an alliance of nonprofit organizations, scientists and donors that designs and implements programs to measurably reduce babies' exposures to toxic chemicals in the first 1,000 days of development.  The testing found certain Earth's Best Organic products contained

10

undisclosed heavy metals.  *See* https://www.healthybabyfood.org/sites/healthybabyfoods.org/ files/2020-04/BabyFoodReport_ENGLISH_R6.pdf.

43.    For example, Earth's Best Whole Grain Rice Cereal had 138 parts per billion ("ppb") of arsenic; 113 ppb of inorganic arsenic; 22.5 ppb of lead; 14.7 ppb cadmium and 2.41 ppb of mercury.  *Id.*  Moreover, Earth's Best Whole Grain Oatmeal Cereal contained 29.5 ppb of arsenic; 2 ppb of lead; and 20.1 ppb of cadmium.  As discussed in detail below, many of these levels exceeded recommended limits.

44.    The Healthy Babies Bright Futures report also found that Earth's Best vegetable purees also contained heavy metals.  For example, the carrots organic baby food contained 4.1 ppb of arsenic and 1.1 ppb of lead.  *Id.*  The organic sweet potato baby food contained 3.3 ppb of arsenic, 14.7 ppb of lead and 4.6 ppb of cadmium.  The First Peas Organic baby food contained 5.9 ppb of arsenic and 3.8 ppb of lead.

45.    Defendant's marketing wrongfully fails to disclose to Plaintiff and consumers the presence, or risk, of heavy metals in its Baby Food Products.

46.    Based on Defendant's marketing, a reasonable consumer would not suspect the presence of heavy metals, nor would a reasonable consumer be able to detect these metals in the Baby Food Products without conducting his or her own scientific testing or reviewing scientific testing conducted on these products.

47.    Reasonable consumers must and do rely on Defendant to honestly report what is in the Baby Food Products.

48.    In light of Defendant's marketing, including its commitment to "higher standards", Defendant knew or should have known that the Baby Food Products contained heavy metals.

49.     Defendant intended for consumers to rely on its marketing, and reasonable consumers did in fact so rely.

50.     Defendant had a duty to ensure that the Baby Food Products were as they were represented, and not deceptively, misleadingly, unfairly, or falsely marketed.

51.     As a result of the foregoing, Defendant's marketing is deceptive, misleading, unfair and false to Plaintiff and other consumers of baby food.

52.     Defendant acted negligently, reckless, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

**Defendant's Marketing and Omissions Are Misleading**

53.     At all times herein, Defendant knew or should have known that the Baby Food Products contained, or could contain, heavy metals and were not sufficiently tested for the presence of these metals.

54.     Defendant knew that heavy metals are a potentially dangerous contaminant that poses health risks to humans, and particularly to babies and children.

55.     The Baby Food Products had a risk of containing heavy metals due to Defendant's failure to monitor for their presence in the ingredients and finished products. Defendant was aware of this risk and failed to disclose it to Plaintiff and the Class.

56.     Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, to minimize the presence of heavy metals in the Baby Food Products to the extent reasonably possible.

57.     Defendant knew or should have known it owed consumers a duty of care to adequately test for heavy metals in Baby Food Products.

58.    Defendant knew consumers purchased the Baby Food Products based on the reasonable expectation that Defendant manufactured the Baby Food Products to the highest standards.  Based on this expectation, Defendant knew or should have known consumers reasonably inferred that Defendant would hold the Baby Food Products to the highest standard.

**Heavy Metals Exceed Safe Limits**

59.    Arsenic, lead, cadmium, and mercury are toxic heavy metals.  The U.S. Food and Drug Administration (the "FDA") and the World Health Organization (the "WHO") have declared these heavy metals to be dangerous to human health, especially to babies and children. Subcommittee Report at 2.

60.    Exposure to heavy metals in food can be harmful to babies' neurological development and long-term brain function.   Even exposure to low levels of these metals can lead to serious and potentially irreversible damage to brain development.  *Id.*  Babies may be more susceptible to levels of toxins and substances as they are in the critical years of brain growth and development.  According to James Dickerson, PhD, chief scientific officer for Consumer Reports, "[e]xposure to heavy metals has a disproportionate adverse effect on developing minds and bodies."   Dickerson said that exposure to these metals has "deleterious effects on the developing infant mind, brain, cardiovascular system, and immune system" and can lead to a lower IQ or behavioral problems like ADHD, as well as an increased risk of skin and bladder cancer.

61.    Internal Company standards permit dangerously high levels of toxic heavy metals, and documents revealed that the manufacturers like Hain Celestial have often sold foods that exceeded those levels.  Subcommittee Report at 3.

13

62.    Hain Celestial set an internal standard of 200 ppb for arsenic, lead, and cadmium in some of its ingredients.  Subcommittee Report at 4.  Hain exceeded its internal policies, using ingredients containing over 350 ppb lead and over 300 ppb arsenic.  Hain justified deviations above its ingredient testing 5 standards based on "theoretical calculations," even after Hain admitted to the FDA that its testing underestimated final product toxic heavy metal levels.  *Id.*

63.    On August 1, 2019, the FDA received a secret slide presentation from Hain Celestial, which revealed that its corporate policies to test only ingredients (and not final products) underrepresent the levels of toxic heavy metals in baby foods.  The slide presentation revealed that in 100% of the Hain Celestial baby foods tested, inorganic arsenic levels were higher in the finished baby food than the Company estimated they would be based on individual ingredient testing.  Subcommittee Report at 5.  Further, inorganic arsenic was between 28% and 93% higher in the finished products.  It was further found that many of Hain's baby foods were tainted with high levels of inorganic arsenic—half of its brown rice baby foods contained over 100 ppb inorganic arsenic; its average brown rice baby food contained 97.62 ppb inorganic arsenic; and that baby food producers like Hain Celestial may be adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix.  *Id.*

a.    **Arsenic**

64.    Arsenic is an odorless and tasteless element that does not degrade or disappear.  It occurs in the environment and can be found in rocks, soil, water, air, plants, and animals.  Inorganic arsenic is highly toxic and a known cause of human cancers.  Exposure to arsenic can also cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, and damage to children's central nervous systems and cognitive development.

65.     Because of the risks associated with exposure to arsenic, both the FDA and the Environmental Protection Agency (the "EPA") have set limits for the allowable amount of arsenic.  The allowable limit of arsenic is 10 ppb for human in consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA).

66.     In August 2020, the FDA issued guidance for inorganic arsenic in infant rice cereal at 100 ppb.  According to the Subcommittee Report, one quarter of the baby food products tested by the Nurture company contained more than this level; some ingredients used by Beech-Nut tested as high as 913 ppb, and Gerber used at least 67 batches of rice flour testing more than 90 ppb inorganic arsenic.

67.     Hain Celestial sold finished baby food products containing as much as 129 ppb inorganic arsenic.  Subcommittee Report at 3.  The report found that Hain Celestial typically only tested its ingredients and not the finished products.  Further, documents show that Hain Celestial used brown rice flour that tested as high as 309 ppb arsenic.  Subcommittee Report at 16. Hain Celestial used a vitamin pre-mix containing 223 ppb arsenic, and raisin and wheat flour containing 200 ppb arsenic.  *Id.*

**b.     Cadmium**

68.     Exposure to cadmium is associated with decreases in IQ and the development of ADHD.  The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA likewise determined that cadmium is a probable human carcinogen.  It has been specifically noted that "[k]idney and bone effects have…been observed in laboratory animals ingesting cadmium."

69.     There has been some regulation on the use of cadmium outside of the baby food product realm, with the both the FDA and EPA setting a limit of 5 ppb in drinking water.  *See*

Subcommittee Report at 29.  The WHO has set a limit of 3 ppb for cadmium in drinking water. Moreover, organizations like Healthy Babies Bright Futures have set a goal of *no* measurable cadmium in baby food and Consumer Reports has called for a 1 ppb cadmium limit in fruit juices.  *Id*.  The EU has set a limit ranging from 5-20 ppb cadmium in baby formula.

70.    The Subcommittee Report found that baby food manufacturers, including Hain Celestial, sold many baby food products that exceeded these levels.

71.    Hain Celestial used 102 ingredients in its baby food that tested over 20 ppb cadmium. Some tested much higher, up to 260 ppb cadmium.  Subcommittee Report at 3.

72.    Hain Celestial used ingredients in its baby food containing up to 260 ppb cadmium. Hain Celestial used 14 ingredients that contained more than 100 ppb cadmium, including barley flour that registered at 260 ppb cadmium.  Subcommittee Report at 30.  That is thirteen times the EU's lax upper limit on cadmium in baby food. Hain Celestial tested and used 102 ingredients that registered at or above 20 ppb cadmium—the EU's lax upper limit, as demonstrated by this chart excerpted from data in the Subcommittee Report at 31:

| Products | Cadmium Result (ppb) |
|---|---|
| Org Barley Flour | 260 |
| IQF Org Chopped Broccoli | 250 |
| Org Date Paste | 220 |
| Org Cinnamon Powder | 200 |
| Org Brown Flax Milled | 190 |
| Org Date Paste | 190 |
| Org Yellow Papaya Puree | 170 |
| Org Whole Wheat Fine Flour | 160 |
| Org Red Lentils | 130 |
| Org Oat Flakes | 130 |

| Products | Cadmium Result (ppb) |
|---|---|
| Org Brown Flax Milled | 121 |
| Org Barley Flour | 110 |
| Org Oat Flour | 102 |
| Org Cinnamon Flour | 102 |

### c.    Lead

73.    Lead is persistent, and it can bioaccumulate in the body over time.  *See* https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water.  It is a carcinogen and developmental toxin known to cause health and developmental problems in children including decreased cognitive performance, delayed puberty, and reduced postnatal growth.  Because lead can build up in the body over time, even low levels of chronic exposure can be toxic and seriously dangerous to one's health.

74.    The American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports have all called for a 1 ppb level of lead in food and drinks that babies and children consume.  Subcommittee Report at 21.  While there is no lead standard for lead in baby foods, the FDA standard for lead in bottled water is 5 ppb lead.  *See* 21 C.F.R. § 165.110(b)(4)(iii)(A).  The EU has set the maximum lead level in infant formula to 20 ppb. *See* Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods.  FDA Failed to Warn Consumers of Risk,* The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/.

75.    The Subcommittee Report found that Hain Celestial used ingredients containing as much as 352 ppb lead.  Subcommittee Report at 26.  Additionally, Hain Celestial used an ingredient called vitamin pre-mix in its baby food that contained as much as 352 ppb lead.  *Id.*

76.     The Subcommittee Report found that Hain Celestial used six ingredients that tested above 200 ppb lead.  Hain Celestial used 88 ingredients with lead levels at or over 20 ppb—the EU's standard for lead in infant formula.  Subcommittee Report at 27.  Additionally, Hain Celestial accepted 115 ingredients that registered at or over 15 ppb—EPA's action level for drinking water.  *Id.*  And at least 27% of Hain Celestial ingredients tested at or over 5 ppb lead, the FDA's standard for lead in bottled water.  None of the test results showed an ingredient below 1 ppb lead, which should be the upper limit for lead content according to the health experts at Consumer Reports, the Environmental Defense Fund, and the American Academy of Pediatrics.  *Id*.

**d.    Mercury**

77.     Mercury is a known toxin, and pre-natal exposure has been associated with affected neuro-development, a decreased IQ, and autistic behaviors.  The impact of mercury exposure to humans and animals has been studied for years; as early as 1997, the EPA issued a report to Congress that detailed the health risks to humans and animals.  Because of these risks and mercury's toxicity, both state and federal regulators have enacted regulations to protect humans and animals.

78.     For example, the EPA has capped mercury in drinking water a 2 ppb.  Consumer advocates have urged for even stricter standards for baby food.  Health Babies Bright Futures has called for a goal of *no* measurable mercury in baby food.  *See* Subcommittee Report at 32.

79.     Hain Celestial does not even test its ingredients or finished products for mercury in baby food.  Subcommittee Report at 33.

80.     Based on the foregoing, reasonable consumers like Plaintiff would consider the high level of these toxic metals as a material fact when considering which baby food to purchase.

81. Defendant knew that properly and sufficiently monitoring and testing for heavy metals in its ingredients and Baby Food Products was critical.

82. Finally, Defendant knew or should have known that it could control the levels of heavy metals in the Baby Food Products by properly monitoring its ingredients for heavy metals and adjusting any formulation or diet to reduce ingredients that contained higher levels of heavy metals.

83. Defendant also knew it was not properly and sufficiently testing for the presence of heavy metals in the Baby Food Products.

84. Defendant knew or should have known that consumers reasonably expected it to test for and monitor the presence of heavy metals in the Baby Food Products and ingredients.

85. Defendant knew, yet failed to disclose, its lack of regular testing and knowledge of the risk of heavy metals in the Baby Food Products.

86. The statements, representations, partial disclosures, and omissions made by Defendant are crafted to deceive the public as they create an image that the Baby Food Products are healthy, nutritious, made from the best ingredients, subject to strict quality control, and free of toxic levels of heavy metals.

87. Reasonable consumers, such as Plaintiff and the Class members, would have no reason to doubt Defendant's statements regarding the quality of the Baby Food Products. Defendant's failure to disclose and/or concealment of the level of toxins in the Baby Food Products together with the misrepresentations alleged herein that were intended to, and did, cause consumers like Plaintiff to purchase products they otherwise would not have if the true quality and ingredients were disclosed.

19

88.    As a result of its wrongful marketing, including its misleading, deceptive, unfair and false representations and omissions, Defendant capitalized on and reaped enormous profits from consumers like Plaintiff who paid the purchase price or a premium for the Baby Food Products that were not as advertised.

## PLAINTIFF'S RELIANCE AS REASONABLE AND FORESEEABLE

89.    Plaintiff reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing concerning the qualities and benefits of the Baby Food Products.

90.    Plaintiff read and relied upon the labels and packaging of the Baby Food Products when making purchasing decisions.  Had Plaintiff known Defendant omitted the high level of heavy metals from its packaging, Plaintiff would not have purchased the Baby Food Products.

91.    A reasonable consumer would consider the labeling of a product when deciding whether or not to purchase it.  Here, Plaintiff relied on the specific statements and omissions on the Baby Food Products' labeling that led her to believe Earth's Best Baby Food Products were healthy, nutritious, and did not contain high levels of heavy metals.

## DEFENDANT BREACHED ITS EXPRESSED AND IMPLIED WARRANTIES

92.    Defendant had sufficient notice of its breaches of express and implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical properties of the Baby Food Products.  Moreover, Defendant was put on notice by the Healthy Babies Bright Future Report released in October 2019, regarding the inclusion of heavy metals or other toxins in the Baby Food Products.  *See* https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf.

20

93.    Defendant did not change its packaging or labeling to include a disclaimer that the Baby Food Products contained, or may contain, high levels of heavy metals.

### PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASSES

94.    Defendant knew that consumers such as Plaintiff and the proposed members of the Class would be the end purchasers or users of the Baby Food Products and the target of its advertising and statements.

95.    Defendant intended the warranties, advertising, labeling, statements, and other representations would be considered by the end purchasers of the Baby Food Products, including Plaintiff and the proposed Class.

96.    Defendant directly marketed the Baby Food Products to Plaintiff and the proposed Class through statements on its website, labeling, advertising, and packaging on the Baby Food Products.

97.    Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

### CLASS ACTION ALLEGATIONS

98.    Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure. Notwithstanding, at this time, Plaintiff brings this action and seek certification of the following proposed class:

>       All persons within the United States who purchased and/or consumed the Baby Food Products for household or business use, and not for resale, from October 1, 2015 through the date of class certification (the "Class" or the "National Class").

99.    Plaintiff Boyd brings this action individually and on behalf of the following Texas Sub-Class:

> All persons who are citizens of the State of Texas, who, from October 1, 2015 through the present, purchased the Baby Food Products for household or business use, and not for resale (the "Texas Sub-Class").

100.    Excluded from the proposed Class and Subclass is the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents, employees, and their legal representatives, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

101.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

102.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1) –** The members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the thousands to tens of thousands. The number of members in the Classes is presently unknown to Plaintiff but may be verified by Defendant's records.  Members of the Classes may be notified of the pendency of this action by mail, e-mail, Internet postings, and/or publication.

103.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3) –** Common questions of law and fact exist as to all members of the Classes and predominate over individual questions.  Such common questions of law or fact include, but are not limited to:

a.    Whether Defendant owed a duty of care;

b.    Whether Defendant knew or should have known that the Baby Food Products contained high levels of heavy metals;

c.    Whether the Baby Food Products contain dangerous levels of toxic heavy metals;

22

d.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Baby Food Products are deceptive;

e.  Whether Defendant's actions violate state consumer fraud statutes;

f.  Whether Defendant's actions constitute common law fraud;

g.  Whether Plaintiff and members of the Classes were damaged by Defendant's conduct as alleged herein;

h.  Whether Defendant was unjustly enriched at the expense of Plaintiff and the members of the Classes; and

i.  Whether Plaintiff and the members of the Classes are entitled to injunctive relief.

104.  **Typicality – Federal Rule of Civil Procedure 23(a)(3) –** The claims of the named Plaintiff are typical of the claims of the other members of the Class and the subclass.  All members of the Classes were similarly injured by Defendant's conduct as described herein, and there are no defenses available to Defendant that are unique to Plaintiff or any particular Class members.

105.  **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4) –** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of other Class members; she has retained class counsel competent to prosecute class actions and financially able to represent the Classes.

106.  **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2) –** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.  In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing Baby Food Products

23

until such time that Defendant can demonstrate to the Court's satisfaction that its baby foods are accurately labeled.

107.    **Superiority – Federal Rule of Civil Procedure 23(b)(3) –** A class action is superior to any other means of adjudication for this controversy.  It would be impracticable for members of the Classes to individually litigate their own claims against Defendant because the damages suffered by Plaintiff and members of the Classes are relatively small compared to the cost of individually litigating their claims.  A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

<u>**CAUSES OF ACTION**</u>

**COUNT I**
**Breach of Express Warranty Against Defendant on Behalf of the Class**
**(or, alternatively, the Subclass)**

108.    Plaintiff incorporates by reference and realleges each and every allegation detailed above, as though fully set forth herein.

109.    Defendant marketed and sold the Baby Food Products into the stream of commerce with the intent that the Baby Food Products would be purchased by Plaintiff and the Class.

110.    Defendant expressly warranted, advertised, and represented to Plaintiff and the Class that the Baby Food Products are organic and safe.

111.    Defendant made these express warranties regarding the Baby Food Products' quality, ingredients, and fitness for consumption in writing via its website, advertisements, and marketing materials, as well as on the labels and packaging of the products themselves.  These

express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Baby Food Products.

112.    Defendant's advertisements, warranties, and representations were made in connection with the sale of the Baby Food Products to Plaintiff and the Class.  Plaintiff and the Class relied on Defendant's advertisements, warranties, and representations regarding the Baby Food Products in deciding whether to purchase Defendant's products.

113.    Defendant's Baby Food Products do not conform to its advertisements, warranties, and representations in that they:

    a.  Are not natural or suitable for consumption by human infants; and

    b.  Contain, or may contain, high levels of certain heavy toxic metals.

114.    Defendant was on notice of this breach as Hain Celestial was aware of the levels of heavy metals in the Baby Food Products based on the investigation disclosed in the October 2019 Healthy Babies Bright Futures report that showed its Baby Food Products as unhealthy.

115.    Privity exists because Defendant expressly warranted to Plaintiff and the Class through warranting, packaging, advertising, marketing, and labeling that the Baby Food Products were healthy, natural, and safe for consumption and by failing to make any mention of heavy metals and/or other contaminants.

116.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Food Products that were worth less than the price they paid and that they would not have purchased had they known of the risk and/or presence of high levels of heavy metals and /or other contaminants that do not conform to the products' labels, packaging and advertisements.

117.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to its express warranties and resulting breach.

**COUNT II**
**Breach of Implied Warranty of Merchantability Against Defendant**
**on Behalf of the Class (or alternatively, the State Subclass)**

118.    Plaintiff incorporates by reference and realleges each and every allegation detailed above, as though fully set forth herein.

119.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class.

120.    There was a sale of goods from Defendant to Plaintiff and the Class.

121.    At all times mentioned herein, Defendant manufactured or supplied the Baby Food Products, and prior to the time they were purchased by Plaintiff and the Class, Defendant impliedly warranted to them that the Baby Food Products were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact when they purchased the Baby Food Products.

122.    The Baby Food Products were not fit for their ordinary use, consumption by babies, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, high levels of heavy metals, and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

123.    Defendant breached its implied warranties by selling Baby Food Products that failed to conform to the promises or affirmations of fact made on the container or label as each product contained high levels of heavy metals, and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

26

124.    Defendant was on notice of this breach, as it was aware of the heavy metals included, or at risk, in the Baby Food Products, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

125.    Privity exists because Defendant impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Food Products were natural and suitable for consumption by babies, and by failing to make any mention of heavy metals, and/or unnatural or other ingredients.

126.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food Products that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of high levels of heavy metals, and/or unnatural or other ingredients.

127.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

**COUNT III**
**Fraudulent Misrepresentation Against Defendant on Behalf of the Class**
**(or, alternatively, the State Subclass)**

128.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

129.    Defendant falsely represented to Plaintiff and the Class that their Baby Food Products are high quality and safe.

27

130.    Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Baby Food Products.

131.    Defendant knew that their representations about the Baby Food Products were false in that they contained, or were at risk of containing, high levels of heavy metals, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

132.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Baby Food Products to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted these products, Plaintiff's and the Class's reliance on Defendant's misrepresentations was justifiable.

133.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

134.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**COUNT IV**
**Fraud by Omission Against Defendant on Behalf of the Class**
**(or, alternatively, the State Subclass)**

135.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

136.    Defendant concealed from and failed to disclose to Plaintiff and the Class that their Baby Food Products contained, or were at risk of containing, high levels of heavy metals, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

137.    Defendant was under a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients and suitability of the Baby Food Products because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the ingredients, characteristics, and suitability of the Baby Food Products for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Baby Food Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Baby Food Products.

138.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Food Products.

139.    Plaintiff and the Class justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Baby Food Products, which is inferior when compared to how the Baby Food Products are advertised and represented by Defendant.

140.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the

risk and/or presence of high levels of heavy metals, or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

141.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT V
### Negligent Misrepresentation Against Defendant on behalf of the Class
### (or, alternatively, the State Subclass)

142.    Plaintiff incorporates by reference and repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

143.    Plaintiff reasonably placed her trust and reliance in Defendant's representations that the Baby Food Products were healthy, nutritious, made from the best ingredients, and safe for consumption and did not contain high levels of heavy metals.

144.    Because of the relationship between the parties, Defendant owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of heavy metals in the Baby Food Products, or, having spoken, to say enough not to be misleading.

145.    Defendant breached its duty to Plaintiff and the Class by providing false, misleading, and/or deceptive information regarding the nature of the Baby Food Products.

146.    Plaintiff and the Class reasonably relied upon the information provided by Defendant.  A reasonable consumer would have relied on Defendant's own warranties, statements, representations, advertising, packaging, labeling, and other marketing as to the quality, make-up and ingredients of the Baby Food Products.

147.    As a result of the misrepresentations, Plaintiff and the Class purchased the Baby Food Products, and purchased them at a premium.

148.    Defendant failed to use reasonable care in its communications and representations to Plaintiff and the Class, especially in light of its knowledge of the risks of heavy metals and the importance to consumers of such information when purchasing the Baby Food Products.

149.    By virtue of Defendant's negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial, or alternatively, Plaintiff and the Class seek rescission and disgorgement under this Count.

**COUNT VI**
**STATUTORY BREACH OF IMPLIED WARRANTY**
**(Tex. Bus. & Com. Code § 2.314)**
**(Brought by Plaintiff Boyd on behalf of the Texas Class)**

150.    Plaintiff incorporates by reference and repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

151.    Plaintiff Boyd brings this cause of action on behalf of herself and the Texas Class.

152.    Hain is and was at all relevant times a "merchant" under Texas Business and Commercial Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" under § 2.103(a)(4).

153.    The Baby Food Products are and were at all relevant times "goods" within the meaning of Texas Business and Commercial Code §§ 2.105(a) and 2A.103(a)(8).

154.    A warranty that the Baby Food Products were in merchantable condition and fit for the ordinary purpose for which baby food products are used is implied by law, pursuant to Texas Business and Commercial Code §§ 2.314 and 2A.212.

155.    Hain impliedly warranted that the Baby Food Products were of merchantable quality and fit for such use. This implied warranty included, inter alia, a warranty that the Baby Food Products were manufactured, supplied, distributed, and/or sold by Hain were safe for consumption by infants.

156.    Hain breached the implied warranty of merchantability in that the Baby Food Products were not in merchantable condition when they were sold to Plaintiff and Texas Class members because the Baby Food Products were and are unfit for the ordinary purposes for which such products are used because they pose a serious safety risk to the children who consume them.

157.    Hain has been provided notice of these issues, as alleged herein.

158.    As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiff and the Texas Class members have suffered damages.

**COUNT VII**
**STATUTORY BREACH OF EXPRESS WARRANTIES**
**(Tex. Bus. & Com. Code § 2.313)**
**(Brought by Plaintiff Boyd on behalf of the Texas Class)**

159.    Plaintiff incorporates by reference and repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

160.    Plaintiff Boyd brings this cause of action on behalf of herself and the Texas Class.

161.    Hain is and was at all relevant times a "merchant" under Texas Business and Commercial Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" under § 2.103(a)(4).

162.    The Baby Food Products are and were at all relevant times "goods" within the meaning of Texas Business and Commercial Code §§ 2.105(a) and 2A.103(a)(8).

163.    In connection with the sale of the defective Baby Food Products to the Plaintiff and the Texas Class, Hain provided an express warranty.

164.    Hain breached this warranty by selling Baby Food Products that were unsafe for infant consumption.

165.    Hain has had a reasonable opportunity to cure its breaches.

166.    Hain has been provided notice of these issues by numerous complaints as described herein.

167.    As a direct and proximate result of Hain's breach of express warranties, Plaintiff and the Texas Class members have been damaged in an amount to be determined at trial.

## COUNT VIII
## UNJUST ENRICHMENT
### (On Behalf of the Class, or alternatively, the State Subclass)

168.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

169.    Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Baby Food Products, of which Defendant had knowledge.  By its wrongful acts and omissions described herein, including selling the Baby Food Products, which contain toxic heavy metals, including arsenic, cadmium, mercury and lead, at levels above what is considered safe for babies and which did not otherwise perform as represented or for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class members.  Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

170.    Defendant has profited from its unlawful, unfair, misleading and deceptive practices at the expense of Plaintiff and putative Class members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.  It would be inequitable for Defendant to retain the profits, benefits and other compensation obtained from its wrongful conduct as described herein in connection with selling the Baby Food Products.

171.    Defendant has been unjustly enriched in retaining the revenue derived from the Class members' purchases of the Baby Food Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured defective Baby

Food Products, misrepresented the nature of the Baby Food Products, misrepresented their ingredients, and knowingly marketed and promoted dangerous and defective products which caused injuries to Plaintiff and the Class because they would not have purchased the products based on the same representations if the true facts concerning the Baby Food Products had been known.

172.    Plaintiff and putative Class members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Baby Food Products on the same terms or for the same price had they known the true nature of the Baby Food Products and what they contained.

173.    Defendant either knew or should have known that payments rendered by Plaintiff or putative Class members were given or received with the expectation that the Baby Food Products were safe for infant consumption as represented by Defendant in advertising, on Defendant's websites and on the Baby Food Product's labels and packaging.  It is inequitable for Defendant to retain the benefit of payments under these circumstances.

174.    Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

175.    Plaintiff and the putative Class Members are in privity with Defendant because Defendant's sale of the Baby Food Products was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of selling the Baby Food Products.

176.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of,

and/or imposition of a constructful trust upon profits, benefits and other compensation obtained by Defendant for its inequitable and unlawful conduct.

**PRAYER FOR RELIEF**

177.    WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.    Enjoining Defendant from selling Baby Food Products until the higher and/or unsafe levels of heavy metals are removed;

C.    Enjoining Defendant from selling Baby Food Products in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

D.    Requirinig Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.    Ordering Defendant to pay actual damages to Plaintiff and the other members of the Classes;

F.    Ordering Defendant to pay restitution to Plaintiff and the other members of the Classes;

G.    Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

H.    Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes, to Plaintiff and the other members of the Classes;

I.     Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other members of the Class as allowable by law;

J.     Ordering Defendant to pay both pre- and post-judgment interest as allowable by law, on any amounts awarded; and

K.     Ordering such other and further relief as may be just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: February 18, 2021                    **BARRACK, RODOS & BACINE**

     *s/ Jeffrey A. Barrack*
Jeffrey A. Barrack (JB8668)
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
T: (215) 963-0600
F: (215) 963-0838
jbarrack@barrack.com
jpalley@barrack.com

      and

Michael A. Toomey (MT6688)
**BARRACK, RODOS & BACINE**
Eleven Times Square
640 8th Avenue, 10th Floor
New York, NY 10036
T: (212) 688–0782
F: (212) 688–0783
mtoomey@barrack.com

      and

Stephen R. Basser
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
T: (619) 230–0800
F: (619) 230–1874

John G. Emerson
**EMERSON FIRM, PLLC**
2500 Wilcrest, Suite 300
Houston, TX 77042
T: (800)-551-8649
F: (501)-286-4659
jemerson@emersonfirm.com


Christopher D. Jennings
(AR Bar No. 2006306)
**JOHNSON FIRM**
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
T: (501) 372-1300
F: (888) 505-0909
chris@yourattorney.com

*Attorneys for Plaintiff*